## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Louis A. Rodriguez, being sworn, state:

### Introduction and Agent Background

1.    I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since March 2018.  I am currently assigned to the Boston Field Division where I am a member of the Organized Crime Drug Enforcement Task Force ("OCDETF") Strike Force. As a Special Agent, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant.

2.    I have participated in numerous investigations and arrests involving violations of state and federal controlled substances laws, including Title 21, United States Code, Sections 841(a)(1) and 846.  A number of those investigations resulted in arrests, indictments, and convictions for violations of drug laws and/or other criminal offenses, the seizure of drugs, money, and vehicles, and the forfeiture of personal property.  My investigations have included the use of surveillance techniques, tracking warrants, and the execution of search, seizure, and arrest warrants.

3.    As a result of my training and experience, I am familiar with the methods, routines, and practices of individuals involved in the use, sale and trafficking of narcotics.  I am also familiar with the various paraphernalia used to manufacture, compound, process, deliver, and dispense, import and export, and use controlled substances such as methamphetamine, fentanyl, heroin, cocaine, marijuana, prescription medications, and others.  I have debriefed numerous defendants, informants, and witnesses who have had personal knowledge about drug activities and the operation of drug trafficking organizations.  I have sworn out numerous affidavits in support of search warrants, arrest warrants, and other Court applications.

4.     Based on my training and experience, I am familiar with the manner in which drug traffickers use telephones, coded or slang-filled telephone conversations, text messages, and other means to facilitate their illegal activities.

5.     Based on my training and experience, I am familiar with the methods of operation employed by drug traffickers and money launderers operating at the local, state, national, and international levels, including those involving the distribution, storage, and transportation of controlled substances and the collection of money that constitutes the proceeds of drug-trafficking activities.  Specifically, I am familiar with the manner in which drug traffickers and money launderers use vehicles, common carriers, mail and private delivery services, and a variety of other means to transport and distribute drugs and the proceeds of drug trafficking.  I am familiar with the manner in which drug traffickers and money launderers often store drugs and drug proceeds in storage sites commonly referred to as "stash houses."

6.     Based on my training and experience, I understand that illegal drug trafficking and money laundering often involves the local, interstate, and international movement of drugs to distributors and co-conspirators at multiple levels, and the movement of the proceeds of drug trafficking among multiple participants including suppliers, customers, distributors, and money launderers.  Consequently, the location of drug traffickers and money launderers and those working with them can be instrumental in identifying and intercepting shipments of illegal drugs and drug proceeds.  Based on my training and experience, I believe that illegal drugs and drug proceeds are often transported in motor vehicles and the through the mail and that drug traffickers often coordinate such transportation through the use of cellular telephones.  Because cellular telephones are often the principal means by which drug dealers and money launderers communicate with their suppliers and customers, drug traffickers and money launderers typically

keep their cellular telephones with them at all times.  As a result, obtaining cell-site information that reflects the movement of cellular telephones being used by individuals engaged in drug trafficking frequently leads to evidence of drug and money laundering offenses, including, but not limited to: (a) the identification of potential criminal associates, such as criminal co-conspirators, suppliers of illegal drugs, and money launderers; (b) the identification of physical locations at which illegal drugs are offloaded, stored, and/or distributed, including residences, businesses, commercial storage facilities, warehouses, and ports; and/or (c) the identification of locations where drug proceeds are stored, deposited, concealed, used in monetary and financial transactions, and laundered, including private businesses, banks, wire-remitter businesses, and other financial institutions.  Such information often corroborates and verifies information and investigative leads derived from other investigative techniques, such as physical surveillance.

**Purpose of the Affidavit**

7.      Since at least July 2023, I have been investigating Samuel Jean-Baptiste ("JEAN-BAPTISTE") (dob: xx/xx/1986) for distribution and possession with intent to distribute controlled substances, that is methamphetamine and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

8.      Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that on May 29, 2024, JEAN-BAPTISTE did knowingly and intentionally distribute and possess with the intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 18 U.S.C. § 841(a)(1) and 841(b)(1)(C) (the "Target Offense"). This affidavit is being submitted for the limited purpose of obtaining a criminal complaint and arrest warrant for JEAN-BAPTISTE.  As a result, I have not included each and every fact known to me, and other law enforcement officers involved in the investigation of JEAN-BAPTISTE in which I have

participated since July 2023. Rather, I have included only those facts that I believe are necessary to establish probable cause for the issuance of the requested complaint and arrest warrant.

9.   I am familiar with the facts and circumstances of the investigation of JEAN-BAPTISTE based on information I have received from a variety of sources, including but not limited to my own personal participation in the investigation; oral and written reports and documents that I have received from other federal, state, and local law enforcement agents; physical and electronic surveillance conducted by me and other federal, state, and local law enforcement agents; confidential sources of information; public records; business records; telephone toll records, pen registers and trap and trace information, and telephone subscriber information; precise location information for cellular telephones; and controlled purchases of narcotics.

## Probable Cause

### I.   Investigation Background

10.   In early July 2023, investigators identified JEAN-BAPTISTE as a significant distributor of controlled substances in the Boston area. A confidential source ("CS-1")[1] thereafter made three controlled purchases of a combined 700 grams of fentanyl from JEAN-BAPTISTE.

---

[1] CS-1 has been providing information to law enforcement about drug trafficking targets since July 2023. CS-1 is cooperating with law enforcement for monetary compensation. CS-1 is currently serving a term of probation following a conviction for Assault and Battery, Mayhem, Disrupting Court Proceedings, and Intimidation. He also has previous convictions for drug possession. CS-1's information has been corroborated by other investigative means. As such, I believe that information provided by CS-1 is reliable.

During the third controlled purchase, CS-1 introduced a second confidential source ("CS-2")[2] to JEAN-BAPTISTE and told JEAN-BAPTISTE that CS-2 purchased fentanyl from CS-1. From this point forward, CS-2 was in direct communication with JEAN-BAPTISTE.

## II. Solicitation and Delivery of Ten Pounds of Methamphetamine from JEAN-BAPTISTE

11.     On May 22, 2024, JEAN-BAPTISTE informed CS-2 that he would soon be traveling from Las Vegas, Nevada to Boston, Massachusetts. JEAN-BAPTISTE and CS-2 discussed a potential transaction in which CS-2 would purchase ten pounds of methamphetamine from JEAN-BAPTISTE in exchange for $32,000. At the direction of investigators, CS-2 recorded this call and I have reviewed the recording.

12.     On May 27, 2024, JEAN-BAPTISTE sent a WhatsApp message to CS-2 informing him that he would arrive in Boston on May 28, 2024. On May 28, 2024, JEAN-BAPTISTE informed CS-2 that he was having an associate in California ship ten pounds of methamphetamine to Boston and that it would arrive at approximately 1:00 p.m. on May 29, 2024. JEAN-BAPTISTE informed CS-2 that after the methamphetamine arrived in Boston, they could conduct the transaction at a gas station at Logan Airport in Boston, Massachusetts after which JEAN-BAPTISTE would "disappear back into the airport" to travel back to Las Vegas. At the direction of investigators, CS-2 recorded this call and I have reviewed the recording.

---

[2] CS-2 has been cooperating with the FBI since spring of 2018. CS-2 has a criminal history that includes controlled substances convictions. In exchange for CS-2's cooperation, CW-2 has received consideration on potential charges related to controlled substances and monetary compensation. CS-2 has provided information that has resulted in multiple drug seizures and arrests. Investigators have corroborated the information provided by CS-2 as set forth herein, and I believe the information provided by CS-2 to be reliable.

13.     At approximately 12:00 p.m. on May 29, 2024, at the request of investigators,  CS-2 sent JEAN-BAPTISTE a WhatsApp message requesting that the meeting location be moved to a Courtyard Marriott Hotel in East Boston, Massachusetts.

14.     At approximately 2:24 p.m. on May 29, 2024, JEAN-BAPTISTE sent a WhatsApp message to CS-2, stating that he was en route to the predetermined meeting location.  In advance of his arrival, investigators commenced surveillance at the predetermined meeting location.

15.     At 3:02 p.m., JEAN-BAPTISTE called CS-2 and informed him that he had arrived at the predetermined meeting location.  At that time, investigators observed JEAN-BAPTISTE arrive exiting a Honda Civic carrying a blue backpack.  JEAN-BAPTISTE was the passenger of the car.  At that time, investigators detained JEAN-BAPTISTE.   After being advised of his *Miranda* rights, JEAN-BAPTISTE declined to answer any questions.  Upon his being detained, investigators took possession of the backpack.  After opening it, investigators observed a quantity of a crystalline substance.  Based on my visual review of the contents of the backpack, I believe that the package contained approximately methamphetamine, a Schedule II controlled substance.

## **CONCLUSION**

16.     Based on the foregoing, I submit that there is probable cause to believe that on May 29, 2024, JEAN-BAPTISTE did knowingly and intentionally distribute and possess with the intent to distribute methamphetamine, a Schedule II controlled substance, in violation of 18 U.S.C. § 841(a)(1), and 841(b)(1)(C).

Respectfully submitted,

/s/ Louis A. Rodriguez

Louis A. Rodriguez, Special Agent
Federal Bureau of Investigation

Sworn to telephonically in accordance with Federal Rule of Criminal Procedure 4.1 on May 29, 2024.

Hon. M. Page Kelley
United States Magistrate Judge
District of Massachusetts

7